UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

| | |
|---|---|
| PAM MILLER, Individually and For Others Similarly Situated,<br><br>  Plaintiff,<br><br>v.<br><br>THE STEAM GENERATING TEAM, LLC,<br><br>  Defendant. | Case No. 3:19-cv-429<br><br>JURY TRIAL DEMANDED<br><br>COLLECTIVE ACTION PURSUANT TO 29 U.S.C. § 216(b) |

## ORIGINAL COLLECTIVE ACTION COMPLAINT

### SUMMARY

1. Pam Miller (Miller) brings this lawsuit to recover unpaid overtime wages and other damages from Defendant The Steam Generating Team, LLC (STG) under the Fair Labor Standards Act (FLSA). *See* 29 U.S.C. § 201 *et seq.*

2. Miller and the Putative Class Members (as defined below) regularly work more than 40 hours a week.

3. But SGT classifies Miller and the other workers like her as independent contractors and pays them the same hourly rate for all hours worked, including those in excess of 40 hours in a single workweek ("straight time for overtime").

4. SGT's "straight time for overtime" pay plan violates the overtime requirements of the FLSA. *See* 29 U.S.C. § 201 *et seq.*

5. Miller brings this collective action to recover unpaid overtime wages and other damages owed to her and other hourly workers like her.

## JURISDICTION & VENUE

6. This Court has original subject matter jurisdiction because this case presents a federal question. 29 U.S.C. § 216(b); 28 U.S.C. § 1331.

7. Venue is proper under 28 U.S.C. § 1391(b)(1) because SGT maintains its headquarters in this District and Division. Specifically, SGT maintains it principal office at 7207 IBM Drive, CLT-3A, Charlotte, North Carolina 28262.

## PARTIES

8. Miller was employed by SGT from approximately June 2016 until April 2017 and regularly worked in excess of 40 hours a week without receiving overtime pay. The exact dates and hours that Miller worked are reflected in SGT's records.

9. Miller's written consent is attached as Exhibit 1.

10. Miller brings this action on behalf of herself and all other similarly situated hourly workers, under the collective action provisions of the FLSA. *See* 29 U.S.C. §216(b). SGT subjected the Putative Class to the same FLSA violations as Miller, and such a class is properly defined as:

> **All individuals working for or on behalf of SGT who were paid the same hourly rate for all hours worked including those in excess of 40 hours in a single workweek ("straight time for overtime") at any time during the last 3 years** ("Putative Class Members").

11. The Putative Class Members are easily ascertainable from SGT's business and personnel records.

12. Defendant SGT is an Ohio limited liability company that maintains its headquarters in Charlotte, North Carolina.

13. Defendant **SGT** may be served through its registered agent: **CT Corporation System, 160 Mine Lake Court, Suite 200, Raleigh, North Carolina 27615 USA.**

14. Throughout Miller's employment, SGT paid her and other workers like her at the same hourly rate for all hours worked.

## COVERAGE UNDER THE FLSA

15. At all relevant times, SGT was an employer within the meaning of the Section 3(d) of the FLSA. 29 U.S.C. § 203(d).

16. At all relevant times, SGT was an enterprise within the meaning of Section 3(r) of the FLSA. 29 U.S.C. § 203(r).

17. At all relevant times, SGT was an enterprise engaged in commerce or in the production of goods for commerce within the meaning of Section 3(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1).

18. SGT had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods (such as pipelines, piping, and pressure vessels) or materials that have been moved in or produced for commerce by any person, including but not limited to, drilling rigs, trucks, mobile devices, document scanners, printers, telephones, and other goods or materials that have moved in, or were produced for, commerce.

19. SGT's annual gross volume of sales made or business done have far exceeded the minimum ($500,00.00) required for coverage under the FLSA during the last 3 years.

20. At all times hereinafter mentioned, Miller and the Putative Class Members were engaged in commerce or in the production of goods for commerce.

21. SGT uniformly applied its policy of paying its workers, including Miller, straight time for overtime.

22. SGT applied this policy regardless of any alleged individualized factors such as job position, job duties/responsibilities, or geographic location.

23. By paying its workers straight time for overtime, SGT violated (and continues to violate) the FLSA's requirement that it pay employees overtime compensation at 1 and ½ times their regular rates for hours worked in excess of 40 in a workweek.

- 3 -

Case 3:19-cv-00429-RJC-DCK   Document 1   Filed 09/03/19   Page 3 of 12

24. As a result of this uniform policy, Miller and other workers like her do not receive overtime as required by the FLSA.

25. SGT's uniform compensation scheme of paying its workers straight time for overtime is, in of itself, a violation of the FLSA. 29 U.S.C. § 207(a) & (e).

**FACTUAL ALLEGATIONS**

26. Defendant SGT provides various industrial replacement services to the nuclear industry, including nuclear construction services, fuel, engineering, and heavy components for nuclear power plants across the United States.[1]

27. Miller primarily worked in Russellville, Arkansas.

28. Miller worked for SGT from approximately June 2016 until April 2017.

29. SGT classified Miller as an independent contractor.

30. SGT typically scheduled Miller and the Putative Class Members for 12-hour shifts, for 6 to 7 days a week, for weeks at a time.

31. SGT scheduled Miller to work at least 12 hours a day, but she often worked more.

32. Thus, Miller worked approximately 72 to 84 hours in a typical workweek (far in excess of the overtime threshold of 40 hours).

33. Miller's working relationship with SGT is similar to that of the Putative Class Members.

34. Miller's work schedule is typical of the Putative Class Members.

35. SGT knew Miller and the Putative Class Members were scheduled for at least 12 hours a day, for as many as 7 days a week.

36. SGT's records reflect the fact that Miller and the Putative Class Members regularly worked far in excess of 40 hours in certain workweeks.

---

[1] https://www.sgt-llc.com/services/ (last visited August 8, 2019).

37. SGT did not pay Miller or the Putative Class Members overtime for hours worked in excess of 40 in any of those weeks.

38. Instead, SGT paid them the same hourly rate for all hours worked ("straight time for overtime").

39. For example, SGT paid Miller $90.00/hour.

40. As such, Miller and the Putative Class Members were not properly compensated at one-and-one-half times their regular rate, as required by the FLSA, for all hours worked in excess of 40 hours in a single workweek.

41. SGT set Miller and the Putative Class Members' schedules and compensation; supervised them; required them to adhere to strict guidelines, directive, and its (or its clients') policies and procedures; and required them to submit timesheets for SGT's approval in order to be paid.

42. Even if their job titles and precise job duties differ, SGT subjected Miller and the Putative Class Members to the same or similar illegal pay practice for similar work.

43. The work Miller and the Putative Class Members performed was an essential part of SGT's core businesses.

44. SGT did not require any substantial investment by Miller or the Putative Class Members to perform the work required of them.

45. SGT controlled Miller and the Putative Class Members' opportunities for profit and loss by dictating the days and hours they work and the rates they are paid.

46. Miller and the Putative Class Members were not required to possess any unique or specialized skillset (other than that maintained by all other workers in their respective positions) to perform their job duties.

47. While working for SGT, SGT controlled all the significant or meaningful aspects of the job duties Miller and the Putative Class Members perform.

48. SGT exercised control over the hours and locations Miller and the Putative Class Members work, the tools and equipment they use, and the rates of pay they receive.

49. Even when Miller and the Putative Class Members worked away from SGT's offices without the constant presence of SGT's supervisors, SGT still controlled significant aspects of their job activities by enforcing mandatory compliance with its (or its clients') policies and procedures.

50. More often than not, Miller and the Putative Class Members utilized equipment and/or facilities SGT provided to perform their job duties.

51. Miller and the Putative Class Members did not provide the significant equipment they work with on a daily basis, such as office space, computers, and communication devices.

52. SGT (and/or its clients) made these large capital investments in buildings, machines, equipment, tools, and supplied the business in which Miller and the Putative Class Members work.

53. Miller and the Putative Class Members did not incur operating expenses like rent, payroll, marketing, and insurance.

54. Miller and the Putative Class Members were economically dependent on SGT.

55. SGT set Miller and the Putative Class Members' rates of pay, their work schedules, and effectively prevented them (or outright prohibited them) from working other jobs for other companies while they were working on jobs for SGT.

56. SGT directly determined Miller and the Putative Class Members' opportunities for profit and loss.

57. Miller and the Putative Class Members' opportunities for profit and loss were based on the number of hours SGT scheduled them to work.

58. Very little skill, training, or initiative was required of Miller and the Putative Class Members to perform their job duties.

59. Indeed, the daily and weekly activities of Miller and the Putative Class Members were routine and largely governed by standardized plans, procedures, and checklists created by SGT.

60. Virtually every job function was predetermined by SGT (or its clients), including the tools and equipment used at the job site, the data to compiled, the schedule of work, and related work duties.

61. SGT prohibited Miller and the Putative Class Members from varying their job duties outside of the predetermined parameters and required Miller and the Putative Class Members to follow SGT's (or its clients') policies, procedures, and directives.

62. Miller and the Putative Class Members performed routine job duties largely dictated by SGT (or its clients).

63. Miller and the Putative Class Members were not employed by SGT on a project-by-project basis.

64. All of SGT's hourly workers performed similar job duties and were subjected to the same or similar policies and procedures that dictated the day-to-day activities they perform.

65. All of SGT's hourly workers worked similar hours and were denied overtime as a result of the same illegal pay practice.

66. All of SGT's hourly workers worked in excess of 40 hours each week and were often scheduled to work 12-hour shifts, for 6 to 7 days a week, for weeks at a time.

67. SGT uniformly denied Miller and the Putative Class Members overtime for the hours they worked in excess of 40 hours in a single workweek.

68. Miller and the Putative Class Members were not employed on a salary basis. They never received guaranteed weekly compensation from SGT irrespective of the days or hours worked.

69. SGT's policy of paying Miller and the Putative Class Members straight time for overtime violates the FLSA because it deprived Miller and the Putative Class Members of overtime for the hours they worked in excess of 40 hours in a single workweek.

## COLLECTIVE ACTION ALLEGATIONS

70. Miller brings this claim as a collective action under the FLSA.

71. The Putative Class Members are similarly situated in all relevant respects.

72. Even if their precise job duties might vary somewhat, these differences do not matter for the purposes of determining their entitlement to overtime.

73. The illegal pay policy that SGT imposed on Miller was likewise imposed on all Putative Class Members.

74. Numerous individuals were victimized by this pattern, practice, and policy which is in willful violation of the FLSA.

75. Based on her experiences and tenure with SGT, Miller is aware that SGT's illegal practices were imposed on other Putative Class Members.

76. The Putative Class Members were similarly denied overtime at the proper rates when they worked more than 40 hours per week.

77. The overtime owed to Miller and the Putative Class Members will be calculated using the same records and using the same formula.

78. Miller's experiences are therefore typical of the experiences of the Putative Class Members.

79. The specific job titles or precise job locations of the various members of the Putative Class do not prevent collective treatment.

80. Miller has no interests contrary to, or in conflict with, the Putative Class Members that would prevent collective treatment.

81. Like each Putative Class Member, Miller has an interest in obtaining the unpaid overtime wages owed under state and/or federal law.

82. A collective action, such as the instant one, is superior to other available means for fair and efficient adjudication of the lawsuit.

83. Absent a collective action, many Putative Class Members will not obtain redress of their injuries, and SGT will reap the unjust benefits of violating the FLSA.

84. Further, even if some of the Putative Class Members could afford individual litigation against SGT, it would be unduly burdensome to the judicial system.

85. Concentrating the litigation in one forum will promote judicial economy and parity among the claims of the Putative Class Members, as well as provide judicial consistency.

86. The questions of law and fact that are common to each Putative Class Member predominate over any questions affecting solely the individual members.

87. Among the common questions of law and fact are:

    a. Whether SGT employed the Putative Class Members within the meaning of the FLSA;

    b. Whether SGT's violation of the FLSA resulted from a continuing course of conduct;

    c. Whether SGT's decision to pay these workers straight time for was made in good faith;

    d. Whether SGT's violation of the FLSA was willful; and

    e. Whether SGT's illegal pay practice applied to the Putative Class Members.

88. Miller and the Putative Class Members sustained damages arising out of SGT's illegal and uniform pay policy.

89. Miller knows of no difficulty that will be encountered in the management of this litigation that would preclude its ability to go forward as a collective or class action.

90. Even if the issue of damages were somewhat individual in character, the damages can be calculated by reference to SGT's records, and there is no detraction from the common nucleus of liability facts. Therefore, this issue does not preclude collective and class action treatment.

91. SGT is liable under the FLSA for failing to pay overtime to Miller and the Putative Class Members.

92. Consistent with SGT's illegal pay policy, Miller and the Putative Class Members were not paid the proper premium overtime compensation when they worked more than 40 hours in a workweek.

93. As part of its regular business practices, SGT intentionally, willfully, and repeatedly engaged in a pattern, practice, and/or policy of violating the FLSA with respect to Miller and the Putative Class Members.

94. SGT's illegal pay policy deprived Miller and the Putative Class Members of the premium overtime wages they are owed under federal law.

95. SGT is aware, or should have been aware, that the FLSA required it to pay Miller and the Putative Class Members overtime premiums for all hours worked in excess of 40 hours per workweek.

96. There are many similarly situated Putative Class Members who have been denied overtime pay in violation of the FLSA who would benefit from the issuance of a court-supervised notice of this lawsuit and the opportunity to join it.

97. Notice of this lawsuit should be sent to the Putative Class Members pursuant to 29 U.S.C. § 216(b).

98. Those similarly situated workers are known to SGT, are readily identifiable, and can be located through SGT's records.

## CAUSE OF ACTION

### Violation of the FLSA

99. Miller realleges and incorporates by reference all allegations in preceding paragraphs.

100. At all relevant times, SGT was an enterprise engaged in interstate commerce and/or the production of goods for commerce, within the meaning of the FLSA.

101. SGT employed Miller and the Putative Class Members.

102. SGT's pay policy denied Miller and the Putative Class Members overtime compensation at the legal overtime rates required by the FLSA.

103. Specifically, SGT failed to compensate Miller and the Putative Class Members in accordance with the FLSA by paying them the same hourly rate for all hours worked, including those in excess of 40 hours in a workweek.

104. SGT's failure to pay Miller and the Putative Class Members overtime at rates not less than one and one-half times their proper regular rate violates 29 U.S.C. § 207.

105. The foregoing conduct constitutes a willful violation of the FLSA.

106. Miller and the Putative Class Members are entitled to recover their unpaid overtime compensation, liquidated damages, reasonable attorneys' fees, costs, and expenses of this action from SGT.

## JURY DEMAND

107. Miller hereby demands a trial by jury.

## PRAYER

WHEREFORE, Miller, individually, and on behalf of the Putative Class Members respectfully requests that this Court grant the following relief:

    a. An order designating this lawsuit as a collective action and authorizing notice pursuant to 29 U.S.C. § 216(b) to the Putative Class Members to permit them to join this action by filing a written notice of consent;

    b. A judgment against SGT awarding Miller and the Putative Members all their unpaid overtime compensation and an additional, equal amount, as liquidated damages;

    c. Issuance of a declaratory judgment that the practices complained of in this Complaint are unlawful under the FLSA;

    d. An order awarding attorneys' fees, costs, and expenses;

    e. Pre- and post-judgment interest at the highest applicable rates; and

    f. Such other and further relief as may be necessary and appropriate.

Respectfully submitted,

By: */s/ Tamara L. Huckert*
    **Christopher Strianese**, NC Bar No. 46918
    **Tamara Huckert**, NC Bar No. 35348
    **STRIANESE HUCKERT LLP**
    3501 Monroe Rd.
    Charlotte, NC 28205
    Tel: 704-966-2101
    chris@strilaw.com
    tamara@strilaw.com

    **AND**

    **Michael A. Josephson\***
    Texas Bar No. 24014780
    **Andrew W. Dunlap\***
    Texas Bar No. 24078444
    **Taylor A. Jones\***
    Texas Bar No. 24107823
    **JOSEPHSON DUNLAP LLP**
    11 Greenway Plaza, Suite 3050
    Houston, Texas 77046
    713-352-1100 – Telephone
    713-352-3300 – Facsimile
    mjosephson@mybackwages.com
    adunlap@mybackwages.com
    tjones@mybackwages.com
    *\* Motions for Pro Hac Admission to be submitted*

    **AND**

    Richard J. (Rex) Burch\*
    Texas Bar No. 24001807
    **BRUCKNER BURCH PLLC**
    8 Greenway Plaza, Suite 1500
    Houston, Texas 77046
    713-877-8788 – Telephone
    713-877-8065 – Facsimile
    rburch@brucknerburch.com
    *\* Motion for Pro Hac Admission to be submitted*

    **ATTORNEYS IN CHARGE FOR PLAINTIFF**